UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

MICHAEL RUSSO, Assistant Attorney
General in Charge, Buffalo Regional Office,
in his official capacity; STATE OF NEW
YORK; KATHY HOCHUL, Governor of
New York, in her official capacity; LETITIA
JAMES, Attorney General of New York, in
her official capacity,

    Defendants.

Case No.: 1:26-cv-1283

Honorable Lawrence J. Vilardo
United States District Judge

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR DISMISSAL OF MICHAEL RUSSO AND
<u>TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................... 1

**STANDARD OF REVIEW** ..................................................................................................... 3

    **I.**   **Motion to Dismiss**.................................................................................................... 3

    **II.**  **Motion to Transfer**.................................................................................................. 4

**ARGUMENT**............................................................................................................................ 5

    **I.**   **Defendants' Motion to Dismiss Should Be Denied Because the Assistant Attorney General in Charge of the Buffalo Regional Office Is a Proper Party.** ......................... 5

    **II.**  **Defendants' Motion to Transfer Venue Should Be Denied.**......................................... 8

      **A.** **New York is at Home in Any District in the State and the Events Giving Rise to the Claim Will Occur Here.**........................................................................................ 8

      **B.**  **The *Eskofot* Factors Favor This Court Retaining Venue.**........................................ 9

**CONCLUSION** ..................................................................................................................... 18

**INTRODUCTION**

The United States filed this action challenging several provisions of New York's Fiscal Year 2026 budget legislation SB9005-C (the "Budget Act") that regulates federal law enforcement, specifically the State's restrictions on federal officers' use of face coverings (the "Face Covering Act"), identification requirements (the "Identification Act"), and prohibition of certain immigration-enforcement partnerships (the "Termination Act") that are preempted by federal law and violate the Supremacy Clause. Complaint ("Compl."), ECF 1 ¶¶ 1–14. These provisions will significantly impede federal law enforcement's ability to carry out its congressionally authorized responsibilities throughout New York, *id.* ¶¶ 89–109, with particularly acute effects in the Buffalo area because of its location along the United States-Canada border and its longstanding role in federal immigration enforcement.

Federal law enforcement's Buffalo-area operations have historically depended on cooperation with local law enforcement, including through six Section 287(g) Agreements serving the region for the Western District of New York ("W.D.N.Y.") alone that facilitate the transfer of removable illegal aliens from local custody. The Budget Act will eliminate those partnerships and require federal officers to undertake more dangerous and resource-intensive at-large arrests. *Id.* ¶¶ 105–106. Additionally, prohibiting officers from wearing face coverings and requiring them to display identifying information during enforcement operations will increase the risk of retaliation, doxxing, and harassment of officers conducting immigration operations in the Buffalo region and elsewhere in New York, thereby undermining the federal government's ability to enforce the United States's laws effectively. *Id.* ¶¶ 95–104.

Plaintiff brought suit to enjoin the State of New York and certain of its officers who are responsible for enforcing the challenged provisions of the Budget Act, including Governor Kathy Hochul, New York Attorney General Letitia James, and Michael Russo in his official capacity as

the Assistant Attorney General in Charge of the Buffalo Regional Office but who is now, according to his declaration, the Deputy Attorney General for Regional Affairs within the New York State Office of the Attorney General. ECF 8-1 ¶¶1–2. Defendants now move to dismiss Defendant Russo from the suit and to transfer venue to the Northern District of New York ("N.D.N.Y.").

Defendants' motion relies on two fundamental premises: Michael Russo is not a proper party, and venue is not proper in W.D.N.Y.—and tacking on the unsupported assertion that the United States is attempting to forum-shop. These allegations ignore the facts at hand. Michael Russo was named in his "official capacity," not in any personal capacity, Compl. ¶ 19, making the official position, and not the individual, party to the lawsuit. Instead, the successor who now holds the position is automatically substituted under Fed. R. Civ. P. 25(d). Further, throughout the Complaint, the United States demonstrated how federal law enforcement activity and 287(g) Agreements will be impacted across New York, with particular and specific impacts concentrated in counties of the Western District. Declarations from federal law enforcement officials reinforce those claims. *See generally*, Declaration of Matthew Allen ("Allen Decl."), ECF 4-3; Declaration of Allen Davis II ("Davis Decl.") ECF 4-4; Declaration of Justin Hargis ("Hargis Decl.") ECF 4-5; Declaration of Bryan Flanagan ("Flanagan Decl."), ECF 4-6.

Rather than a "gambit" to side-step the N.D.N.Y., Defendants' Memorandum ("Mot."), ECF 8-2 at 1, the United States brought this action in an appropriate venue based on federal agencies, offices, and operations that will be directly affected by the Budget Act and specifically by the Face Covering, Identification, and Termination Acts (collectively, the "Challenged Acts") which attempt to regulate, control, and serve as an obstacle to federal law enforcement efforts.

Federal law enforcement activity across New York and in W.D.N.Y. specifically will be significantly impacted by the challenged laws which take effect today (June 26, 2026), *see e.g.*,

Compl., ¶¶ 50–51, 54, 56, 57, 61, 98, 127; Davis Decl. ¶¶ 1, 14, 20; Flanagan Decl. ¶¶ 26, 35, 47, 54; Allen Decl. ¶¶ 1, 3, 8, 13, 20; Hargis Decl. ¶¶ 3, 16–17. The Face Covering and Identification Acts attempt to control what federal law enforcement officers wear in New York, with criminal penalties attached for violations. Compl. ¶¶ 67–74. Defendants, through the Termination Act, also banned Congressionally-designed 287(g) Agreements across the whole state; of the 14 existing 287(g) Agreements, the largest portion of affected Agreements are from counties in this district and particularly in this division. Compl. ¶ 57; *id.* n.8; 287(g) Agreements, ECF 4-7–4-20.

The United States chose to bring this matter in the district and division where the facts and impacts of the laws readily apply, not to avoid another district. The challenged laws have substantial implications for federal law enforcement operations particularly across W.D.N.Y. and specifically within the Buffalo Division. Since the Challenged Acts notably affect federal law enforcement in this district, venue in this Court is proper and the case should not be transferred.

## STANDARD OF REVIEW

### I.      Motion to Dismiss

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when ... the plaintiff lacks constitutional standing to bring the action." *Cellco P'ship v. City of Rochester*, 473 F. Supp. 3d 268, 277 (W.D.N.Y. 2020) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015). "In order to survive a defendant's motion to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Id.* (quotation omitted). "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it ... the plaintiff has no evidentiary burden." *Id.* (quotation omitted).

## II.      Motion to Transfer

"Plaintiff's choice of forum should not be changed lightly and should be accorded substantial weight." *Air-Flo M.G. Co. v. Louis Berkman Co.*, 933 F. Supp. 229, 233 (W.D.N.Y. 1996) (citing *Olinick & Sons v. Dempster Bros.*, 365 F.2d 439 (2d Cir.1966); *Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F.Supp. 563, 565 (S.D.N.Y. 1979)). "The burden of demonstrating the desirability of transfer lies with the moving party." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 95 (S.D.N.Y. 1995). "Consequently, '[t]he moving party must make a clear-cut showing that transfer is in the best interests of the litigation.'" *Id.* (quotation omitted). Motions to transfer an action outside of a district are judged by a more rigorous standard than motions to transfer within a district. *Moore v. Allentown Vill. Soc., Inc.*, No. 13-CV-6263, 2013 WL 4008740, at *1 (W.D.N.Y. Aug. 5, 2013).

Factors for a court to consider in assessing a motion to transfer include: the convenience of witnesses and the parties; the locus of the operative facts; the location of relevant documents and the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the relative means of the parties; a forum's familiarity with the governing law; the weight accorded the plaintiff's choice of forum; and trial efficiency and the interest of justice, based on the totality of the circumstances. *D.H. Blair & Co., v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006); *Eskofot*, 872 F. Supp. at 95 (hereinafter the "*Eskofot* Factors").

## ARGUMENT

### I.    Defendants' Motion to Dismiss Should Be Denied Because the Assistant Attorney General in Charge of the Buffalo Regional Office Is a Proper Party.[1]

Plaintiff's injuries are traceable to all defendants, including Assistant Attorney General in Charge ("AAGIC") of the Buffalo Regional Office ("BRO"), where a significant amount of the harm to Plaintiff will occur. *See infra* pp. 9–18. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirement, a plaintiff must demonstrate: (1) injury-in-fact; (2) causation of the injury, specifically that the injury is "fairly traceable" to the challenged action of the defendant; and (3) redressability, which means that it is "likely" that a favorable decision by the court will redress the injury. *Knight v. City of New York*, 164 F.4th 173, 177–78 (2d Cir. 2026). Defendants challenge only traceability but the connection to the AAGIC of the BRO is clear.[2]

The State of New York, by and through the Governor, authorized the New York Attorney General and the AAGIC of the BRO to carry out the Budget Act's provisions. As explained in the Complaint, "New York Executive Law §§ 63 and 75 empower the New York Attorney General to enforce the laws of the state of New York, and to prosecute and defend all actions and proceedings in which the state is interested," which now includes criminal violations of the Face Covering and Identification Acts. Compl. ¶ 22 (citing New York Executive Law § 63). "Further, the Budget Act amends New York Executive Law to add § 63-e, which empowers the New York Attorney General

---

[1] Plaintiff understands Defendants' motion to be a motion to dismiss only as to Defendant Michael Russo, and not to dismiss the Complaint altogether. For the avoidance of doubt, Plaintiff maintains that this Court would have subject matter jurisdiction over this case even if Defendant Russo is dismissed. 28 U.S.C. §§ 1331, 1345.

[2] Defendants do not dispute that Plaintiff suffers an injury in fact, *see generally*, Mot., and only generally allude to a supposed failure to plead redressability as to the AAGIC of the BRO, Mot. at 4–5. But where an official is enjoined from enforcing an unconstitutional law, the relief "would at least partially redress" the injury sufficiently to establish Article III standing. *Brooklyn Branch of Nat'l Ass'n for the Advancement of Colored People v. Kosinski*, 735 F. Supp. 3d 421, 441 (S.D.N.Y. 2024); *Meese v. Keene*, 481 U.S. 465, 476–77 (1987).

to appoint the head of the immigrant trust office, and to review and take action against violations of the Termination Act." *Id.*

Assistant Attorneys General are given general authority upon appointment by the State Attorney General. N.Y. Exec. Law § 62. And AAGICs in particular are tasked with "investigating and bringing action to protect . . . civil rights." Office of the New York State Attorney General, Regional Affairs, https://ag.ny.gov/about/about-office/regional-affairs (last visited June 25, 2026). This is the exact purview of the Face Covering Act and the Identification Act, *see* SB S9005-C, part LL, subp. F (including the Face Covering Act and the Identification Act in the New York Civil Rights Law).

Defendants' assertion that "Plaintiff has not alleged how [the AAGIC of the BRO] caused their purported injury or how enjoining him is likely to redress such injury," Mot. at 4, is unpersuasive. "[T]he pleading standard plaintiff must meet does not require an exhaustive catalogue of every fact." *Bernstein v. JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701, 715 (S.D.N.Y. 2025), *reconsideration denied*, No. 24-CV-3552 (JGLC), 2025 WL 3753911 (S.D.N.Y. Dec. 29, 2025). Since the AAGIC is tasked with prosecuting violations of at least the Face Covering Act and the Identification Act (according to the New York Attorney General's own website), it follows necessarily that the AAGIC of the BRO "plays some role in the enforcement of the act." *Walden v. Kosinski*, 777 F. Supp. 3d 120, 128 (E.D.N.Y.), *aff'd*, 153 F.4th 118 (2d Cir. 2025). *See also id.*, ("a plaintiff is not required to demonstrate that the defendant is directly responsible for enforcing the law to establish that his injury is fairly traceable to the actions of the defendant."). Further, New York's Attorney General and Office of Immigrant Trust are charged to enforce the Termination Act, and the New York Attorney General could assign or delegate

Brief on Opposition                    - 6 -

authority to enforce the Termination Act to the AAGIC of the BRO against the six existing agreements in W.D.N.Y.

For this same reason, Defendants' reliance on *United States v. New York* is also inapposite. 814 F. Supp. 3d. 266, 275 (N.D.N.Y. 2025). In that case, the court dismissed the Governor and the Attorney General of New York from the case because the "Governor and Attorney General" do not have "any role in enforcing the challenged provisions of the Green Light Law." *Id.* That is not the case here, where the defendants publicly acknowledge that the AAGIC of the BRO is directly responsible for investigating and bringing actions to enforce New York Civil Rights Law, which include the Face Covering Act and the Identification Act, and potentially the Termination Act as well.

Defendants' final argument is that a favorable ruling as to one or more of the other defendants does not show Plaintiff has standing to pursue claims against Defendant Russo because he is "an individual having no apparent connection to the implementation and/or enforcement of the challenged acts." Mot. at 5. Defendants' straw man of Plaintiff's argument fails.

*First*, Plaintiff is entitled to sue multiple officials who can enforce the Challenged Acts, even if the requested relief overlaps. Fed. R. Civ. P 17(d); *see, e.*g., *Cayuga Nation v. Tanner*, 6 F.4th 361, 372 (2d Cir. 2021) (affirming summary judgment against a municipality, its board, and various municipal officials tasked with enforcing a municipal ordinance). Additionally, the AAGIC of the BRO is directly responsible for enforcing the Face Covering Act and the Identification Act, and may also be tasked with enforcement of the Termination Act as explained above. And the significance of the 287(g) agreements the United States has with local law enforcement agencies within this jurisdiction provides an independent basis for traceability.

*Second*, Plaintiff sued Defendant Russo in his official capacity, not as an individual. Compl. ¶ 19. *See* Fed. R. Civ. P 17(d). To the extent that Defendant Russo is indeed no longer the AAGIC of the BRO, this in no way affects the substance of the case. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party [and] any misnomer not affecting the parties' substantial rights must be disregarded."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") To the extent that Defendants attempt to shield the AAGIC of the BRO from liability just because the individual holding the office may have changed, such attempt runs afoul of the Federal Rules of Civil Procedure and precedent.

Defendants Article III standing arguments as to the AAGIC of the BRO fail, and the motion to dismiss him should be denied.

## II.    Defendants' Motion to Transfer Venue Should Be Denied.

W.D.N.Y. is the proper venue for this action and this Court should retain jurisdiction under 28 U.S.C. §§ 1391(b)(1)–(2).

### A.    New York is at Home in Any District in the State and the Events Giving Rise to the Claim Will Occur Here.

**1.** A state may be sued in any jurisdiction within it. *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) ("A state is ubiquitous throughout its sovereign borders…. [A] state with multiple judicial districts 'resides' in every district within its borders."); *see also Trebbles v. Ohio*, No. 6:20-CV-07008 EAW, 2021 WL 1298493, at *1 (W.D.N.Y. Apr. 7, 2021) (citing favorably *Azar*,

911 F.3d at 570). And it goes without saying that W.D.N.Y. is within the borders of the State of New York. So, New York "resides" in W.D.N.Y.

**2.** A substantial part of the events giving rise to the claim occurred, are occurring, or will occur within this district. *See, e.g.*, Compl. ¶¶ 54, 56–57, 67–88.

All federal law enforcement operations across New York are impacted by the Challenged Acts, and the Challenged Acts will impact federal law enforcement efforts in counties served by the Buffalo Division and W.D.N.Y. *See e.g.*, Davis Decl. ¶¶ 1, 14, 16–19; Hargis Decl. ¶¶ 6, 8; Flanagan Decl. ¶¶ 4, 11–12, 26–35.

### B.        The *Eskofot* Factors Favor This Court Retaining Venue.

This Court also retains jurisdiction through careful review of the *Eskofot* factors. *D.H. Blair & Co.*, 462 F.3d at 107; *Eskofot*, 872 F. Supp. at 95. Factors including the locus of facts, the means of parties, the weight of plaintiff's choice of venue, and judicial efficiency and the interest of justice all counsel in favor of retaining this case in this district; factors including the convenience of witnesses and parties, and forum's familiarity with the choice of law can either lean towards staying in this district or are neutral, and compelling any reluctant witnesses is a neutral factor. *Id.*

"[T]he party requesting transfer carries the burden of making out a strong case for transfer, and courts in this circuit apply a clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *King v. Aramark Servs.*, 2019 U.S. Dist. LEXIS 129284 at *8 (W.D.N.Y. 2019) (internal quotation marks and citation omitted). Defendants have not met that burden.

**1.** When considering a motion to transfer venue, courts consider the *Eskofot* factors. *See supra* pp. 4. While Defendants allege the factors "favor transfer of venue to the NDNY" or are neutral, Mot. at 7, 9, that conclusion fails to fully consider all the facts involved—or even attempt

to discuss many of them—and does not sufficiently meet the clear and convincing evidence standard articulated by *N.Y. Marine*, 599 F.3d at 114. In light of all facts, the factors in totality weigh in favor of keeping this action in this Court.

There is no rigid formula for balancing the transfer factors, and no single factor is determinative, *Sentegra, LLC v. Asus Computer Int'l*, 2016 U.S. Dist. LEXIS 71318, at *5 (S.D.N.Y. June 1, 2016), but two primary factors are the convenience of witnesses and parties, and the locus of operative facts serves as a driving factor when deciding between intra-state transfers. For the convenience factors, particularly relating to witnesses and parties, "[d]istrict courts have broad discretion in making determinations of convenience under [28 U.S.C. §] 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co.*, 462 F.3d at 106. "Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Jackson v. Avis Rent A Car Sys., LLC*, 2015 U.S. Dist. LEXIS 29166, at *3 (S.D.N.Y. Mar. 6, 2015) (internal citation and quotation omitted). "In conducting this analysis, the Court 'weighs more heavily the convenience of non-party witnesses than party witnesses.'" *Sentegra, LLC v. Asus Computer Int'l*, 2016 U.S. Dist. LEXIS 71318 at *6 (S.D.N.Y. 2016) (internal citation and quotation omitted).

The convenience of witnesses factor favors Plaintiff. Resolution of Plaintiff's preliminary injunction motion does not require summoning state legislators as witnesses. Plus, the Budget Act is public record, and the AAGIC of the BRO is located in Buffalo. Therefore, there is likely no need for witnesses including legislators or their records to travel to W.D.N.Y. Regardless, such travel is within the State of New York. However, Plaintiff's declarants would favor W.D.N.Y., to the extent they may be needed as witnesses, as Allen Davis II is the Special Agent in Charge of the Buffalo Field Office for the Federal Bureau of Investigation and is located in this district and

his declaration includes facts relevant to W.D.N.Y. Davis Decl. ¶¶ 1, 14, 20. The other Plaintiff-declarants could need to travel to either W.D.N.Y or N.D.N.Y, and their declarations include facts especially relevant to W.D.N.Y. *See e.g.*, Flanagan Decl. ¶¶ 2, 4, 11–12, 26, 35, 47, 54.[3] Therefore, this factor weighs in favor of keeping this action with this Court.

**2.** Defendants similarly contend that the convenience of the parties indicates the need for transfer, Mot. at 10, but Defendants Hochul and James represent all of New York, and the AAGIC of BRO is physically located in this district, which Defendants do not dispute. Mot. at 10. This factor favors retaining venue in W.D.N.Y., based on the AAGIC of BRO's physical presence in this district and the fact that the Attorney General of New York and the Governor of New York were elected as representatives to serve the whole state and are "ubiquitous" throughout New York State. *Azar*, 911 F.3d at 570. This matter is a facial challenge to the constitutionality of elements of the Budget Act and should be easily resolved in favor of Plaintiff on the record already before the Court.

**3.** "The location of the operative events is [also] a primary factor in determining a § 1404(a) motion to transfer." *Matthews v. Bell*, 2019 U.S. Dist. LEXIS 38915 at *5 (W.D.N.Y. Mar. 11, 2019) (alteration in original) (quoting *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002). "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 379 (W.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Age Grp. Ltd. v. Regal Logistics, Corp.*, 2007 U.S. Dist. LEXIS 62476 at *3 (S.D.N.Y. Aug. 8, 2007)). Defendants claim this factor favors Albany and not Buffalo essentially because

---

[3] In analyzing a motion to transfer, "a court may consider material outside of the pleadings." *Matthews v. Bell*, 2019 U.S. Dist. LEXIS 38915, at *1 (W.D.N.Y. Mar. 11, 2019) (internal citation and quotation omitted).

Albany is the capital of New York, but that standard would grant N.D.N.Y. exclusive jurisdiction over any and all constitutional challenges to state laws. That cannot be the rule. Meanwhile, they ignore facts relevant to W.D.N.Y. incorporated in the complaint and the declarations that demonstrate the Budget Act's impact upon federal law enforcement in this district. *See e.g.*, Compl., ¶¶ 50–51, 54, 56, 57, 61, 98, 127; Davis Decl. ¶¶ 1, 14, 20; Flanagan Decl. ¶¶ 2, 4, 11–12, 26, 35, 47, 54; Allen Decl. ¶¶ 1, 3, 8, 13, 20; Hargis Decl. ¶¶ 16–17.

Similarly, of the fourteen existing 287(g) Agreements that will be terminated by the Budget Act, six are in W.D.N.Y., six are in N.D.N.Y, and two are in the Eastern District of New York. *Compare* 287(g) Agreements, ECF 4-7–4-20, *with* Counties Included in the Western District, Western District of New York, https://www.nywd.uscourts.gov/accessing-court, *with* All Counties, Northern District of New York, https://www.nynp.uscourts.gov/counties, *with* Eastern District of New York, https://www.nyed.uscourts.gov/. No federal district in New York has more affected 287(g) Agreements than W.D.N.Y., and particularly no division is impacted more than the Buffalo Division. In W.D.N.Y., four of the six affected Agreements are located within the Buffalo Division, with the remaining two in the Rochester Division. Meanwhile, for N.D.N.Y., one affected 287(g) is in the Albany Division, two are in the Binghamton Division, and three are in the Syracuse Division. In short, W.D.N.Y., and specifically the Buffalo Division, faces a unique and serious impact from Defendants' enforcement of the Budget Act, and while N.D.N.Y. is also impacted, those Agreements are scattered across three different divisions. Here, the locus of the facts from the declarations and the affected 287(g) Agreements favors W.D.N.Y., particularly the Buffalo Division and this Court.

**4.** While Defendants allege that the location of relevant documents and the relative ease of access to sources of proof leans in favor of transferring venue to N.D.N.Y., Mot. at 7, this factor

realistically is neutral or leans in favor of staying with W.D.N.Y. The Budget Act is an electronically-available public record, as are several press releases issued by Defendants, *see e.g.,* Compl., ¶ 2 n.1, ¶ 65–66 n.10–13. Meanwhile, as mentioned above, six of the fourteen affected 287(g) Agreements are all from counties within W.D.N.Y. To the extent it is necessary that documents or other evidence or testimony are needed pertaining to those 287(g) Agreements, the plurality are located here. This factor therefore leans in favor of keeping this action in this Court.

**5.** As to the availability of process to compel attendance of unwilling witnesses, all witnesses are either within New York or are able to travel to New York. The Defendants are also correct that processes to redress unwillingness are equally available in both locations. Mot. at 10. Nevertheless, the Federal Government believes this case presents only legal issues and can be resolved in its favor on the record presently before the Court. This factor is neutral.

**6.** The factor of the relative means of the parties leans toward keeping the matter in W.D.N.Y. The AAGIC of the BRO would not have to travel if this case remains here and would indeed have to expend greater resources to travel to Albany. Defendants' apparent suggestion that New York officials do not have adequate means to travel within the state or attend a hearing in W.D.N.Y., Mot. at 10, is far-fetched at best. All Defendants represent the entire state of New York, and the AAGIC of BRO is specifically the New York Attorney General's Office lead representative in the Buffalo Region and would not need to travel. Similarly, some Federal Government personnel are also regionally located, while others are located in Washington, D.C. Because each side has personnel who are present in W.D.N.Y. while others are located elsewhere, this factor leans toward keeping the matter in W.D.N.Y.

**7.** The factor regarding a forum's familiarity with governing law does not, as Defendants allege, lean toward N.D.N.Y. Instead, the factor is either neutral or leans toward keeping the matter

Brief on Opposition                              - 13 -

in W.D.N.Y. Federal courts, including this Court, are inherently vested with the authority to hear cases "arising under th[e] Constitution [or] the Laws of the United States." U.S. Const. art III, § 2, and *see generally Martin v. Hunter's Lessee*, 14 U.S. 304 (1816) (discussing the powers of the courts). Congress vests federal district courts with subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Presumed within that investiture of authority is that the federal district courts are fully capable of addressing matters of constitutional law such as the Supremacy Clause. To the extent W.D.N.Y. or N.D.N.Y. would be called to address a matter of constitutional law such as the Supremacy Clause, this factor is neutral.

Defendants' apparent suggestion that because other Supremacy Clause litigation brought by the United States was litigated in N.D.N.Y. all future Supremacy Clause matters must be referred there is surprising. Mot. at 7. True, Supremacy Clause cases have been heard in N.D.N.Y regarding certain New York laws not challenged or related in any way to this litigation. But the Budget Act is both a completely different and brand-new law. First, no court is an expert on the Budget Act since, so far as the Federal Government is aware, this is the first lawsuit challenging it in any court. N.D.N.Y. therefore has no advantage over this Court in terms of knowledge of or familiarity with the relevant New York law. Second, none of the provisions challenged in the cases Defendants cite, *id.*, dealt with state laws that regulate federal law enforcement officers' uniforms or cancel ICE's agreements with local sheriffs. As Defendants concede, the Green Light Law prohibited the Department of Motor Vehicles from sharing information with federal immigration agents, *id.* at 7–8; *United States v. New York*, 814 F. Supp.3d 266 (N.D.N.Y. 2025), and the Protect Our Courts Act regulated the Federal Government's ability to conduct civil arrests at or near

Brief on Opposition                    - 14 -

courthouses. Mot. at 7–8; *United States v. New York*, 810 F. Supp.3d 329, 278–79 (N.D.N.Y. 2025). By contrast, the Budget Act poses unique and distinct challenges to federal law enforcement operations, activities, and agreements—with many of the latter being located in this district. Those earlier cases are simply not analogous to Plaintiff's challenge to the Budget Act. The only thing those cases share with this case is the Supremacy Clause of the Constitution. But this Court is just as well-equipped to apply the Supremacy Clause to the facts of any case as any federal district in the United States.

Carry Defendants' logic to its conclusion. Defendants would have this court rule that all Supremacy Clause questions arising out of New York would have to be heard in Albany in N.D.N.Y. That logic would limit Supremacy Clause cases across the United States exclusively to federal districts that house state capitals. That logic is not only flawed; it directly contradicts each district court's individual authority and jurisdiction to hear civil actions arising under the Constitution of the United States. 28 U.S.C. § 1331. Obviously, Defendants' preferred judge in N.D.N.Y. is not more of an expert than this Court on the law and the United States Constitution.

Further, in support of their assertion that this Court should transfer this matter to N.D.N.Y., Defendants cite cases addressing a range of primarily state-based issues, including state-based tort claims that transferred a lawsuit across state lines (*Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231, 235 (E.D.N.Y. 1994)), a bondholding action moving between state court and federal court (*Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124 (E.D.N.Y. 2004)), a financial case transferred between federal courts in Texas and New York (*Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)), and a state-based employment action dealing with civil service laws, contract rights, and the Due Process Clause (*Brown v. New York*, 947 F. Supp. 2d 317, 325–26 (E.D.N.Y. 2013)). Those matters are all primarily state law or location-driven

Brief on Opposition                                    - 15 -

questions, but here, this case directly implicates federal authority from the Supremacy Clause and the Contracts Clause, interference by New York and the Defendants upon federal law enforcement efforts, and federal pre-emption. *Brown* also held that the interests of justice weighed in favor transfer to N.D.N.Y. because there existed *ten* pending suits challenging the constitutionality of the *same subsection* of the same civil service law. *Id.* at 326. This case is a far cry, as Defendants point to only two cases from N.D.N.Y. that are factually and legally distinct, challenge different statutes, and have already been dismissed and appealed, divesting those N.D.N.Y. courts of jurisdiction over the cases. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Therefore, as a matter of the court's familiarity with the applicable law, this factor is neutral as to the Constitution and leans toward retaining this action in this Court because of the Budget Act's specific impacts within this District.

**8.** The penultimate factor, the weight accorded to the Plaintiff's choice of forum, leans to retaining the matter in this Court. While the Defendants incorrectly and without any basis accused the United States of forum shopping and conveniently ignored Fed. R. Civ. P. 25(d), which governs substituting a government official sued in an official capacity when the official no longer holds a public office, *supra* pp. 5–8, the United States chose to pursue this action in W.D.N.Y. based on the unique impacts the enforcement of the Budget Act would have on federal law enforcement in this district—and in this district, enforcement of the Budget Act would be the responsibility of the AAGIC for BRO, who was sued in an official capacity. For example, again, four of the fourteen 287(g) Agreements (and the most out of any single division in a federal district in New York) are located in counties served by the Buffalo Division, and six of the Agreements are within the W.D.N.Y. No other federal division or district in New York experienced that level of impact from the Budget Act. Similarly, federal law enforcement efforts in the W.D.N.Y. region will also be

particularly impacted by the Budget Act. *See e.g.*, Flanagan Decl. ¶¶ 4, 11–12, 26–35; U.S. Custom and Border Protection, Buffalo Sector New York, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/buffalo-sector-new-york (last accessed June 25, 2026) (explaining U.S. Custom and Border Protection's Buffalo Sector, which serves 29 counties across the states of New York, Pennsylvania, Maryland, Virginia, and West Virginia, and is headquartered in Eerie County, N.Y., which is in W.D.N.Y. Buffalo Division jurisdiction). These facts, and others set forth in the Complaint, Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, ECF 4-1, and explained above, demonstrate that the United States' choice to pursue this matter in this Court was not forum shopping, but was instead based on the specific facts and specific applications and implications of the Budget Act in this district. Therefore, the factor regarding Plaintiff's choice of venue leans in favor of keeping this action with this Court.

**9.** The final factor addresses the interest of justice and trial efficiency based on the totality of the circumstances. Here, the factor leans toward keeping this matter in this district. As this case presents a matter of law, the only "trial" required would be any hearings the Court deems necessary to reach its decision, which would also be true in any other federal district. However, in the interest of justice, this matter would be best addressed in W.D.N.Y. As noted above, key facts, parties, and effects of the Challenged Laws are located in W.D.N.Y.

For further efficiency and the interest of justice, the Second Circuit generally favors the district where a matter was first filed. *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). While an exception to the rule exists for forum shopping, *see e.g. Everest Capital Ltd. v. Everest Funds Mgmt.*, L.L.C., 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002), that is not the case here as demonstrated by the facts establishing close ties to Buffalo, making this Court the best venue for this case. Since the United States filed this matter first, and Defendants are aware their

suit was filed several hours later in a different district, Mot. at 7 n.3, this matter should remain in W.D.N.Y. *First City Nat'l Bank*, 878 F.2d at 80. To be sure, if the "balance of convenience … favor[s] … the second action, or … special circumstances … justify giving priority to the second," then transfer can be appropriate. *Motion Picture Lab. Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986). But no special circumstances exist that warrant transfer and the balance of convenience weighs against transfer here.

Further, since Defendants filed *New York v. Blanche*, 26-cv-1281 (N.D.N.Y.) after this instant matter, this Court may enjoin the Defendants from pursuing the same and related allegations in another district until this matter is resolved. *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) (holding the first court to retain jurisdiction has authority to proceed with the action and bar other actions until resolution). The interests of justice and efficiency lean heavily toward retaining this case in this district because a Defendant, the AAGIC of the BRO, is located in this district and federal law enforcement operations, the CBP Buffalo regional office, and 287(g) Agreements affected by the Budget Act are each located in this district—and particularly this division.

## CONCLUSION

Defendants fail on both the motion to dismiss as to Defendant Michael Russo and the motion to transfer. As a party sued in his official capacity as AAGIC of the BRO, the current AAGIC of the BRO is automatically substituted for Michael Russo under Fed. R. Civ. P. 25(d). And, as a matter of judicial efficiency and the interest of justice and the balance of the relevant factors, this Court should retain venue and jurisdiction over this matter and deny Defendants' motions.

Dated: June 26, 2026                    Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division


By:


/s/ Brandon D. Neuman
BRANDON D. NEUMAN
LUKE A MILLER
Trial Attorneys
U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Tel: (202) 227-7416
Email: brandon.neuman@usdoj.gov
Email: Luke.Miller2@usdoj.gov

*Attorneys for Plaintiff United States of America*