UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MICHAEL RUSSO, Assistant Attorney
General in Charge, Buffalo Regional
Office, in his official capacity; STATE OF
NEW YORK; KATHY HOCHUL, Governor
of New York, in her official capacity;
LETITIA JAMES, Attorney General of
New York, in her official capacity,

        Defendants.

26-CV-1283-LJV
DECISION & ORDER

---

This case concerns challenges by the plaintiff, the United States, to recent laws passed by the State of New York. *See* Docket Item 1 ¶¶ 1-13. More specifically, the United States challenges a law that bans law enforcement agents—including federal Immigration and Customs Enforcement ("ICE") agents—from wearing face coverings (the "Face Covering Act"); a law that requires law enforcement agents to identify themselves in certain ways (the "Identification Act"); and a law that "requires local governments, law enforcement agencies, state and local correctional facilities, juvenile detention centers, and youth and family services facilities for youth to terminate agreements" with the federal government under 8 U.S.C. § 1357(g) (Immigration and Nationality Act § 287(g)). *See id.* ¶¶ 4, 7-8 (citing N.Y.C.R.R. §§ 100-02 and N.Y. Exec. Law § 170-k).

Before the Court is a motion to dismiss the case against one of the defendants—Michael Russo—under Federal Rule of Civil Procedure 12(b)(1).  Docket Item 8.  Russo is sued in his official capacity as the Assistant Attorney General in Charge ("AAGIC") of the Buffalo Regional Office ("BRO"), a position that he does not currently hold—and has not held for more than two years.  *See* Docket Item 8-1 ¶ 2.  But that careless error is not why the Court grants the motion to dismiss.[1]  Rather, the Court grants the motion and dismisses the action against Russo because the complaint fails to plead any connection between the office that Russo once held and any harm alleged in the lawsuit.

The defendants also have moved to transfer this case to the Northern District of New York under 28 U.S.C. § 1404(a).  And once Russo and his former office are removed from the equation, there simply is no basis to keep the case here.  Indeed, all of the venue factors under section 1404(a) either are neutral or favor transfer.  Therefore, and for the reasons explained below, this Court grants the motion to transfer venue to the Northern District of New York.

---

[1] The Court agrees with the United States that the complaint easily could be amended to substitute the current AAGIC of the BRO.

2

**DISCUSSION**

## I.    MOTION TO DISMISS

The defendants argue that the United States lacks standing to bring this action against Russo.  Docket Item 8-2 at 6-7.[2]  And based on the allegations in the complaint, they most certainly are correct.

To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).  "A plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim."  *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65-66 (2d Cir. 2012)).  Here, the defendants focus on the second prong of the standing analysis: whether the plaintiff's injury can be fairly traced to Russo.  *See* Docket Item 8-2 at 11.

The 154-paragraph complaint mentions Russo only in the caption and in a single paragraph that states in its entirety: "Defendant Michael Russo is the Assistant Attorney General in Charge for the Buffalo Regional Office of the New York State Attorney General, which covers, *inter alia*, Allegany, Cattaraugus, and Niagara Counties and is sued in his official capacity."  Docket Item 1 ¶ 19.  The complaint says nothing about whether Russo—or anyone else in the BRO, for that matter—had anything to do with

---

[2] Page numbers in docket citations refer to ECF pagination.

the passage of the laws at issue or will have anything to do with their enforcement.  So on its face, the complaint falls far short of demonstrating that any injury to the United States is "fairly traceable to" Russo's conduct.

In response to the motion to dismiss, the United States cited the New York State Attorney General's website, which states that the regional offices "address important matters of social and economic justice in the communities they serve by investigating and bringing action to protect . . . civil rights."  Office of the New York State Attorney General, Regional Affairs, https://ag.ny.gov/about/about-office/regional-affairs (last visited July 10, 2026); *see* Docket Item 10 at 8.  From that statement—which says nothing about criminal prosecutions—the United States infers that Russo and his office are "tasked with prosecuting violations of at least the Face Covering Act and the Identification Act."  Docket Item 10 at 8.

Although those allegations are nowhere to be found in the complaint, the Court acknowledges that "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction," it "may refer to evidence outside the pleadings."  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The Court therefore considers the government's proffer.  But even that does not tip the balance.

First, contrary to the bald assertion by the United States, there is no basis to extrapolate from the generic statement that the regional offices of the Attorney General "investigat[e] and bring[] action to protect . . . civil rights" that the AAGIC of the BRO "is directly responsible for enforcing the Face Covering Act and the Identification."  *See* Docket Item 10 at 9.  On the contrary, the defendants have unequivocally stated in their briefing that "AAGICs do not enforce criminal statutes such as the Face Covering Act

and the Identification Act," Docket Item 13 at 5, and the current AAGIC of the BRO reiterated this as an officer of the Court at oral argument.  What is more, New York's highest court has said as much.  *See Della Pietra v. State of New York*, 71 N.Y.2d 792, 796-97, 526 N.E.2d 1, 3 (1988) ("The Attorney-General . . . is given no general prosecutorial authority and, except where specifically permitted by statute, has no power to prosecute criminal actions." (internal citations omitted)).

When asked about this issue at oral argument, the United States cited *People v. Zara*, 44 Misc. 2d 698, 699, 255 N.Y.S.2d 43 (Sup. Ct. Suffolk Cnty. 1964), which counsel said demonstrates that the New York State Attorney General has the authority to prosecute crimes.  Putting aside the fact that *Zara* is a more than sixty-year-old trial court case from Suffolk County, it says only that the attorney general has latent prosecutorial powers that can be "activated by the request of a proper state officer."  44 Misc. 2d at 701, 255 N.Y.S.2d at 47.  But there is no indication in the complaint—or anywhere else—that any "proper state officer" has requested or even plans to request that the AAGIC of the BRO prosecute violations of the laws at issue in this case.

*Walden v. Kosinski*, 777 F. Supp. 3d 120 (E.D.N.Y.), *aff'd*, 153 F.4th 118 (2d Cir. 2025)—on which the United States also relies, *see* Docket Item 10 at 8—likewise is inapposite.  *Walden* held that "a plaintiff is not required to demonstrate that the defendant is directly responsible for enforcing the law to establish that his injury is fairly traceable to the actions of the defendant."  777 F. Supp. 3d at 128.  Rather, a plaintiff can establish traceability "even where a third party is directly responsible for a plaintiff's alleged injury . . . if the plaintiff establishes that the defendant's actions had a 'determinative or coercive effect upon the action of [the third party],' thus causing the

injury." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).  But there is no reason to believe that the AAGIC of the BRO had or has any "determinative or coercive effect upon" anyone who would enforce the challenged laws.

For all those reasons, the United States lacks standing to bring its claims against Russo.  The Court therefore grants the motion to dismiss the complaint against Russo under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.").

## II.    MOTION TO TRANSFER VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).  A party seeking transfer bears the burden of "making out a strong case for transfer" through clear and convincing evidence.  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (citation omitted).

"In deciding motions to transfer venue under [section] 1404(a)," the court first asks "whether the action could have been brought in the transferee district."  *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (citation omitted).  If the answer to that question is yes, the court then asks "whether transfer would be an appropriate exercise of [its] discretion."  *Id.*

6

Here, there is no question that the case could have been brought in the Northern District of New York. In fact, the United States has brought similar cases in that district in the recent past, *see* Docket Item 8-2 at 9, and on the same day that this case was filed, the defendants filed a mirror-image lawsuit, seeking a declaratory judgment that the challenged laws are lawful, in the Northern District of New York, *id.*; *see* Complaint for Declaratory & Injunctive Relief, *State of New York v. U.S. Dep't of Just. et al.*, 1:26-cv-1281-MAD-ML (N.D.N.Y. June 22, 2026).

Thus, this Court turns to the second half of the section 1404(a) inquiry. To "[a]ssess[] whether transfer is a valid exercise of discretion," a court considers:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded [to] the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 743 (collecting cases). After weighing those factors, this Court concludes that transfer to the Northern District of New York is appropriate here.

### A.     Convenience of the Witnesses and the Parties

The first two factors are the convenience of the witnesses and the parties. As the defendants observe, other than listing Russo's office as being in the Western District of New York, "the [c]omplaint does not describe any parties, acts, events, omissions, witnesses, or other facts having any apparent and substantive connection to this District in particular." Docket Item 8-2 at 12. In contrast, the two remaining named individual defendants—Governor Kathy Hochul and Attorney General Letitia James—"have

7

principal offices in Albany, and the State itself has its capital there," so "it would be more convenient for them to litigate this suit there." *Id.* And "to the extent witness testimony related to the passage of legislation would be permissible . . . , the Legislature that enacted the laws at issue sits in Albany." *Id.* at 11.

The United States certainly could litigate with equal ease in both venues. And although the United States has argued that this District is more convenient for one of its witnesses—Allen Davis II, the Special Agent in Charge of the Buffalo Field Office for the Federal Bureau of Investigation, *see* Docket Item 10 at 12—the United States was unable to explain at oral argument why an FBI agent from the Northern District would not be equally capable of testifying about the impact of the challenged laws.

The first and second factors therefore favor transfer to the Northern District.

**B.    Location of the Relevant Documents and Access to Sources of Proof**

The defendants assert that documents and sources of proof related to the passage of the challenged laws are likely in Albany. *See* Docket Item 8-2 at 11. As the United States has observed, however, the public record for the challenged laws is electronically available. *See* Docket Item 10 at 15. The United States also has argued that this factor weighs against transfer because "the plurality" of the section 287(g) agreements are located in this District. *See* Docket Item 10 at 15. But by the United States' own admission, there are an equal number of 287(g) agreements in the Northern District. *See id.* at 14. Factor three therefore is neutral.

### C. Locus of Operative Facts

The locus of operative facts favors transfer. As noted above, there are an equal number of section 287(g) agreements in the two districts. The facts related to the passage of the challenged laws, however, occurred in Albany.

### D. Availability of Process to Compel the Attendance of Unwilling Witnesses

The parties agree that the availability of process is equal in both districts and that this factor therefore is neutral. *See* Docket Item 8-2 at 12; Docket Item 10 at 15.

### E. Relative Means of the Parties

Both sides argue that this factor favors their position. *Compare* Docket Item 8-2 at 12 ("Factor seven is neutral or favors transfer to the [Northern District of New York], as the federal government has greater financial resources than the State of New York."), *with* Docket Item 10 at 15 ("The factor of the relative means of the parties leans toward keeping the matter in [the Western District of New York]."). But both sides have ample resources and will be financially able to litigate this case in either venue. Factor six therefore is neutral.

### F. Forum's Familiarity with the Governing Law

As the defendants have observed, judges in the Northern District of New York have heard two recent cases with similar legal issues—including one that was assigned to the Honorable Mae A. D'Agostino, the same judge who is presiding over the case that is a mirror image of this one. *See* Docket Item 8-2 at 9 (citing *United States v. New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025) (D'Agostino, J.), and *United States v. New York*, 814 F. Supp. 3d 266 (N.D.N.Y. 2025) (Nardacci, J.)); *see also State of New York*

9

*v. U.S. Dep't of Just. et al.*, 1:26-cv-1281-MAD-ML (N.D.N.Y. 6/22/2026) (D'Agostino, J.).  The Court is sensitive to the United States' argument that this cannot mean that "all Supremacy Clause questions arising out of New York would have to be heard in Albany," *see* Docket Item 10 at 17, and agrees with the United States that the Northern District's familiarity with these issues does not compel transfer.  Nevertheless, familiarity with the law is a factor that the Court can and should consider, and of the two districts, the Northern District is more familiar with the legal issues presented here.  The seventh factor favors transfer, albeit only slightly.

### G.      Weight Accorded to the Plaintiff's Choice of Forum

Generally, the plaintiff's choice of forum is accorded significant weight.  But that is not so when there are indications that the plaintiff was "forum shopping."  *See Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002) ("Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." (quoting *Riviera Trading Corp. v. Oakley, Inc.*, 944 F.Supp. 1150, 1158 (S.D.N.Y.1996))); *see also Shiloah v. GEICO Indem. Co.*, 2025 WL 762548, at *3 (W.D.N.Y. Mar. 11, 2025) (explaining that "[w]here the selected forum is not connected in a meaningful way to the operative facts and is not the plaintiff's residence, the deference to the chosen forum is significantly diminished" (quoting *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 349 (E.D.N.Y. 2012))).

The choice to name Russo as a defendant without doing even the most basic due diligence to confirm that he was still in a job that he had in fact left years before is highly suspect.  The fact that the complaint includes absolutely no facts about Russo's

10

role in the challenged conduct heightens that suspicion. And the fact that the United States previously filed several similar lawsuits in the Northern District of New York but chose not to return there after unfavorable results provides even more reason to smell something fishy. *See* Docket Item 13 at 10.

When pressed on its choice to file in the Western District of New York, the United States pointed to the number of section 287(g) agreements in this District. *See* Docket Item 10 at 14 ("No federal district in New York has more affected [section] 287(g) [a]greements than W.D.N.Y., and particularly no division is impacted more than the Buffalo Division."). But that rationale is nowhere to be found in the complaint; rather it appears to have been conjured up post hoc.[3] Nor is the United States' rationale persuasive: As explained above, there are an equal number of section 287(g) agreements in the Northern District.[4]

---

[3] In a supplemental letter, the United States noted that "Cattaraugus and Allegany County have [section] 287(g) [a]greements that are specifically named in the [c]omplaint and will be impacted by the Termination Act." Docket Item 20 at 1 (citing Docket Item 1 ¶¶ 54, 56, 61). But the complaint also specifically mentions agreements in Madison County, Docket Item 1 ¶ 53, which is the Northern District of New York, *see* 28 U.S.C. § 112(a), and Nassau County, Docket Item 1 ¶ 55, which is in the Eastern District of New York, *see* 28 U.S.C. § 112(c). The United States also said that "Cattaraugus, Niagara, and Stueben counties are listed *alongside other counties* throughout New York that will be impacted by the Termination Act" in a link included in the complaint. Docket Item 20 at 1 (emphasis added). And the United States referred to a footnote in which it cited a press release about Buffalo's state funding as *an example* supporting its allegation that "New York cannot claim state funding as a basis for a legitimate public purpose because while New York does provide some police funding to some counties, towns, and cities, most funding comes from local taxes or bond programs." Docket item 1 ¶ 125 & n.16; *see* Docket Item 20 at 1. None of these references in the complaint suggest that the United States chose the Western District because of the number of section 287(g) agreements located here.

[4] The Court acknowledges that there are more section 287(g) agreements in the Buffalo Division. *See* Docket Item 10 at 14 ("[F]our of the six affected [a]greements are located within the Buffalo Division, with the remaining two in the Rochester Division.

For those reasons, this Court declines to give deference to the plaintiff's choice of forum.[5]

### H.    Trial Efficiency and the Interests of Justice

Finally, trial efficiency and the interests of justice favor transfer.  First and foremost, it would be highly inefficient to have two mirror-image cases in different districts deciding the constitutionality of the same New York laws.  By transferring this case, both cases will be in the same court and could, at the discretion of the presiding judge or judges, be consolidated.

Additionally, "[t]he relative calendar conditions of the two courts involved are a factor which the court may properly consider on a motion to transfer." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968); *see Wilshire Credit Corp. v. Barrett Cap. Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997) (comparing relative caseloads and granting motion to transfer); *Farbenfabriken Bayer A. G. v. Nat'l Distillers & Chem. Corp.*, 324 F. Supp. 156, 160 (S.D.N.Y. 1971) (finding "relative calendar conditions" to be "an important factor" on a motion to transfer).  As the defendants

---

Meanwhile, for N.D.N.Y., one affected 287(g) is in the Albany Division, two are in the Binghamton Division, and three are in the Syracuse Division.").  But that is an unpersuasive stretch—particularly given the United States' position that "this case presents only legal issues and can be resolved in its favor on the record presently before the Court."  Docket Item 10 at 15.

[5] Although the case before this Court was filed first, "[t]he bulk of the precedent in this circuit is that the first filed rule is usually disregarded where the competing suits were filed only days apart." *JewelAmerica v. Frontstep Sols. Grp., Inc.*, 2002 WL 1349754, at *1 n.1 (S.D.N.Y. June 20, 2002) (collecting cases).  That makes all the more sense here where the suits were filed only hours apart.  Moreover, "[e]ven where the first filed rule applies, the presumption that the first filed suit has priority can be overcome if the balance of convenience favors the second filed suit," as is the case here.  *See id.* (citing *Motion Picture Lab'y v. Technicians Local 780*, 804 F.2d 16, 19 (2d Cir. 1986)).

12

observed, Docket Item 13 at 11, the Western District of New York has one fewer judge,

*see* 28 U.S.C. § 133, and a significantly larger caseload than the Northern District of

New York.  *See* Table C-1—U.S. District Courts—Civil Statistical Tables For The

Federal Judiciary (Dec. 31, 2025), https://www.uscourts.gov/data-news/data-

tables/2025/12/31/statistical-tables-federal-judiciary/c-1 (reporting 3,217 pending civil

cases in the Western District for the 12-month period ending December 31, 2025, as

compared with 2,125 in the Northern District); Table D Cases—U.S. District Courts—

Criminal Statistical Tables For The Federal Judiciary (Dec. 31, 2025),

https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-

judiciary/d-cases (reporting 531 pending criminal cases in the Western District for the

12-month period ending December 31, 2025, as compared with 484 for the Northern

District).

And this issue has become exponentially worse in the past year due to an

unprecedented influx of urgent immigration habeas petitions.  As this District's Chief

Judge, the Honorable Elizabeth A. Wolford, recently stated:

> We are already a congested court with some of the busiest dockets in the
> country, and this influx of immigration habeas cases is unprecedented[.]  By
> and large, the cases require immediate attention, and so we are handling
> them by setting aside work on other cases when we can do so.  But it is not
> sustainable for anyone involved[.]

Amanda Robert, *Rising immigration-related caseload is 'not sustainable,' federal judges
say*, ABA Journal, https://www.abajournal.com/news/article/rising-immigration-related-
caseload-is-not-sustainable-federal-judges-say (Feb. 17, 2026, 10:21 a.m.).  In contrast,
the Northern District does not seem to have had the same flood of immigration petitions.
Based on reports this Court ran on CM/ECF, the Western District has had ***over 700*** new
petitions filed since January 1, 2026, while the Northen District has had ***fewer than 60***

13

filed in the same period.  In other words, the Western District—with four active judges, *see* 28 U.S.C. § 133(a)—is facing more than ten times the number of urgent immigration habeas petitions than the Northern District, which has five active judges, *see id*.

At oral argument, the United States expressed a desire for this case to move quickly.  This Court agrees that this case should move quickly.  That is more likely to happen in the Northern District.

## CONCLUSION

For all those reasons, this Court GRANTS the defendants' motion to dismiss the claims against Russo and GRANTS the motion to transfer venue.  The complaint is dismissed against Russo.  The Clerk of Court shall remove Russo as a defendant, transfer this case to the Northern District of New York, and note that it is related to case number 1:26-cv-1281-MAD-ML (N.D.N.Y.).


SO ORDERED.

Dated:   July 10, 2026
         Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE


14